971 So.2d 1008 (2008)
Ronald SEARCY, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-277.
District Court of Appeal of Florida, Third District.
January 9, 2008.
*1010 Bennett H. Brummer, Public Defender, and Howard L. Blumberg, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Lucretia A. Pitts, Assistant Attorney General, for appellee.
Before GREEN, RAMIREZ, and SUAREZ, JJ.
SUAREZ, J.
The defendant appeals from a final judgment of conviction and fifteen-year sentence that resulted from a plea agreement, as well as the trial court's orders denying his Motion to Withdraw Plea and his Motion to Correct an Illegal Sentence. He also appeals his conviction and six-month sentence for direct criminal contempt. We affirm in part and reverse in part.
On November 14, 2005, the defendant, represented by counsel, pursuant to a negotiated plea, entered a guilty plea to tampering with evidence, resisting an officer with violence, and fleeing or attempting to elude a police officer. The State offered 364 days in jail with the Treatment Alternatives to Street Crime (TASC), a drug treatment program. During plea negotiations, the defendant requested a thirty-day furlough from the court. The trial court granted the furlough, provided that the *1011 defendant plead to the maximum sentence of fifteen years in prison, to be mitigated to 364 days upon the defendant's surrender on December 14, 2005, and provided that the defendant met three conditions: surrender in court on time, give a clean drug urine test, and have no new arrests. The defendant agreed and was sentenced. While the defendant was on furlough, he filed a motion to extend his surrender date, which was summarily denied by the trial court. On December 8, 2005, the defendant also filed a pro se motion to withdraw his plea pursuant to Florida Rule of Criminal Procedure 3.170(l), claiming ineffective assistance of counsel.
The defendant timely surrendered in court following the furlough and had no new cases. At that appearance, he asked the judge to rule on his pending pro se motion to withdraw his plea. The trial court summarily denied the motion. The defendant then refused to submit to the urinalysis and engaged in a verbal argument with the trial judge that resulted in the court ordering him three times to show cause as to why he should not be held in contempt. The defendant failed to show cause and continued to engage in disrespectful and disruptive behavior. The court held him in direct criminal contempt and sentenced him to six months in prison, to run consecutive to the unmitigated fifteen-year sentence. The defendant filed a pro se notice of appeal with this Court, and subsequently, a pro se Motion to Correct an Illegal Sentence with the trial court, pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). The trial court summarily denied the Motion to Correct an Illegal Sentence.
The first issue is whether the defendant was represented by counsel at the time he filed his pro se Motion to Withdraw Plea. The record indicates that he was not. Florida Rule of Criminal Procedure 3.111(e) obligates counsel to represent the defendant until after filing a notice of appeal, substitute counsel has been obtained or appointed, or the time has expired for filing of a notice of appeal and no notice has been filed. In this case, the defendant was represented by court-appointed counsel in the sentencing proceedings, but apparently not thereafter. The record shows that the defendant asked the court for a new attorney at the beginning of his sentencing hearing on November 14, 2005, and the court agreed to appoint one, but new counsel was not appointed then or thereafter. It appears from the record that the current appointed trial counsel believed that his services to the defendant terminated on November 15, 2005, the day following the defendant's plea and sentencing, as he filed his motion for attorney's fees and costs on that date. No counsel, appointed or otherwise, was present on December 14, 2005, when the defendant appeared in court for the purpose of surrendering following his furlough, which was the last day on which a notice of appeal could have been filed. No counsel was present to assist the defendant when he asked the trial court to grant his motion to withdraw his plea.
We agree with the defendant that he should have been entitled to conflict-free representation on his pro se Motion to Withdraw Plea filed pursuant to Florida Rule of Criminal Procedure 3.170(l). Many courts have held, and we agree, that an indigent defendant has the right to court-appointed counsel to assist in filing a Rule 3.170(l) motion. See Padgett v. State, 743 So.2d 70 (Fla. 4th DCA 1999) (rejecting the State's classification of the 3.170(l) motion as a collateral or post-conviction motion, and finding the thirty-day window between sentencing and time for filing an appeal to be a critical stage of criminal proceedings); see also Schriber v. *1012 State, 959 So.2d 1254 (Fla. 4th DCA 2007) (holding that the 30-day window provided by Rule 3.170(l) is a critical stage requiring counsel to assist in preparing the initial motion to withdraw plea); Mosley v. State, 932 So.2d 1239 (Fla. 1st DCA 2006) (providing that once a defendant indicates his desire to avail himself of Rule 3.170(l), the trial court must appoint conflict-free counsel to advise and assist); Norman v. State, 897 So.2d 553 (Fla. 1st DCA 2005) (same); Smith v. State, 849 So.2d 485 (Fla. 2d DCA 2003) (same); Wofford v. State, 819 So.2d 891 (Fla. 1st DCA 2002) (same); Lester v. State, 820 So.2d 1078 (Fla. 1st DCA 2002) (same); Williams v. State, 793 So.2d 1112 (Fla. 4th DCA 2001) (same). Here, the defendant indirectly alleges in his motion to withdraw his plea that his plea was involuntary because it was based in part on counsel's representation that he would be able to get him a longer furlough if he took the plea.[1] With this in mind, we reverse the trial court's summary denial of the defendant's motion to withdraw his plea and remand for the court to appoint conflict-free counsel for the purpose of assisting the defendant in the preparation and presentation of this motion, as well as to schedule a new hearing on the merits of the defendant's motion to withdraw his plea.
Next, we consider whether the defendant was entitled to representation by counsel at his court appearance on December 14, 2006, when, in accordance with the plea agreement, he reported to court solely for the purpose of surrendering and commencing his sentence after furlough. The defendant argues that his December 14, 2006, court appearance constituted a sentencing hearing and, thus, a critical stage of the criminal proceedings. Although we acknowledge that criminal defendants facing incarceration have a right to counsel at critical stages of their proceedings, including sentencing, we disagree that the defendant's appearance to turn himself in on December 14, 2006, was a sentencing hearing. The defendant had been properly sentenced one month earlier, on November 14, 2006. At that time the defendant, represented by counsel, entered his plea pursuant to a proper plea colloquy, the court pronounced sentence, and gave the defendant a one-month conditional furlough. The purpose of the defendant's appearance in court at the end of his furlough was merely to report to the Department of Corrections to begin his sentence, and it was not a critical stage of his criminal proceedings requiring representation of counsel.
Finally, we find that the trial court did not abuse its discretion in retaining the negotiated fifteen-year sentence in light of the defendant's refusal to submit to the urinalysis test, one of the conditions of receiving the mitigated sentence. This Court and others have reversed sentences imposed in lieu of mitigated sentences only where the defendants' violations of their furlough terms were de minimis or involuntary. See Navedo v. State, 847 So.2d 585 (Fla. 3d DCA 2003) (finding violation de minimis where the defendant overslept and appeared six hours late); Eulo v. State, 786 So.2d 43 (Fla. 4th DCA 2001) (finding violation de minimis and involuntary where defendant was fifteen minutes late); Amaya v. State, 653 So.2d 1112 (Fla. 3d DCA 1995) (finding delay de minimis where defendant reported six-and-one-half *1013 hours late due to child's hospitalization); Johnson v. State, 501 So.2d 158 (Fla. 3d DCA 1987) (finding defendant's non-appearance involuntary where he had been arrested); Lee v. State, 471 So.2d 195 (Fla. 4th DCA 1985) (finding defendant's delay involuntary where his car broke down on the way to court). The record in this case indicates that the defendant's conduct was neither involuntary nor de minimis. The defendant agreed in his plea, taken one month earlier, that his sentence of fifteen years could be mitigated if he met certain conditions. The defendant had been advised on at least three occasions that a condition of his mitigation was a clean urinalysis. In open court on the day of his surrender, however, he refused to submit to the urinalysis test despite the court's warning that he risked forfeiting the mitigation of sentence. When the defendant did not meet his plea condition and became belligerent, the trial court was within its discretion to refuse to mitigate the sentence that had been imposed one month earlier. See Gaston v. State, 613 So.2d 496, 497 (Fla. 2d DCA 1993) ("Mitigation of a lawful sentence is largely discretionary with the trial court.").
The defendant also filed a Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(b) while this appeal was pending. The motion is in the nature of a motion to withdraw an involuntary plea pursuant to Florida Rule of Criminal Procedure 3.850. We affirm the trial court's denial of the 3.800(b) motion without prejudice to the defendant to re-file his motion after jurisdiction again vests in the trial court. Tompkins v. State, 894 So.2d 857, 859 (Fla. 2005); Hulick v. State, 644 So.2d 117 (Fla. 2d DCA 1994).
The defendant also argues that the trial court erred by holding him in direct criminal contempt without affording him the opportunity to present evidence, in violation of Florida Rule of Criminal Procedure 3.850. The following colloquy occurred at the defendant's surrender appearance:
THE COURT: Mr. Searcy, let me tell you two things. You either submit to the urinalysis or I am going to do an order to withdraw your blood. I believe you are under the influence and if you refuse to stop talking; you don't stop talking, I am going to hold you in contempt. If you don't submit to the urinalysis, then you are going to get the original sentence that we sentenced you to.
DEFENDANT: Then give it to me and I will appeal it to the 3rd DCA. I am tired of your threats.
THE COURT: Excuse me? Stop right there. You can help yourself of the contemptual [sic] behavior you just exhibited by apologizing or I am going to give you six more months. Tell me why I should not give you six more months.
DEFENDANT: It's your call, your Honor. I just want a right to appeal.
THE COURT: I am giving you the opportunity. Tell me why you should not be held in contempt.
DEFENDANT: You know why. You know what you have done to me.
THE COURT: All I want you to tell me is why I should not give you six more months for your contemptuous behavior, raising your voice to this Court and turning your back on the Court and refusing to 
DEFENDANT: Because there is no integrity in your courtroom.
THE COURT: In that case, I am going to hold you in contempt and sentence you to six months consecutive. . . .
A charge of direct criminal contempt presents an exceptional situation as the charging court is afforded significant *1014 power to act simultaneously and summarily as prosecutor, witness, and judge. Moreover, an individual charged with direct criminal contempt neither enjoys a right to a formal hearing on the charges nor is he entitled to legal representation even though the sentence may be incarceration. Williams v. State, 698 So.2d 1350 (Fla. 1st DCA 1997). However, the accused is entitled to the basic protections of due process, and strict compliance with the procedural requirements of Florida Rule of Criminal Procedure 3.830 is necessary to ensure that those procedural due process rights are safeguarded. Garrett v. State, 876 So.2d 24 (Fla. 1st DCA 2004). Failure to follow the procedural requirements of direct criminal contempt constitutes fundamental error. Id. at 25-26. Rule 3.830 requires that the trial judge first inform the defendant of the accusation of criminal contempt and then inquire whether the defendant has cause to show why he should not be held in contempt. Fla. R.Crim. P. 3.830. The rule further provides that, after asking the defendant to show cause why he or she should not be adjudged guilty of contempt, the trial court shall give the defendant "the opportunity to present evidence of excusing or mitigating circumstances." Id.; see Bonet v. State, 937 So.2d 209 (Fla. 3d DCA 2006); Hibbert v. State, 929 So.2d 622 (Fla. 3d DCA 2006); Garrett, 876 So.2d at 24.
Merely asking the defendant if he wishes to explain his behavior does not meet the procedural requirement that he be given an opportunity to present evidence. O'Neal v. State, 501 So.2d 98, 100 (Fla. 1st DCA 1987). In Garrett, the court found that the procedural requirements were not met where the defendant was neither informed that he could present mitigating or excusing circumstances, nor given a separate and distinct opportunity to present mitigating circumstances. "Under these circumstances we cannot conclude that the brief response of appellant substantially reflected what appellant would have presented if he had been given the opportunity contemplated by the rule." Garrett, 876 So.2d at 25
In the instant case, the trial judge asked the defendant to show cause why he should not be held in contempt and even said, "I am giving you an opportunity." But this is not enough as the court failed to advise him that he had the opportunity to present evidence of mitigating or excusing circumstances and failed to provide him with a reasonable opportunity to do so. Given the heat of the moment and the apparent agitation of the defendant, we believe that a better approach may have been to advise the defendant of the contempt charge, ask him to show cause, advise him of his opportunity to present mitigating or excusing circumstances, and then permit him a short, cooling-off period in which to gather his thoughts in order to present a proper defense of his actions. Therefore, we reverse the contempt adjudication without prejudice to the trial court to institute proper contempt proceedings. See Telfair v. State, 903 So.2d 257 (Fla. 1st DCA 2005) (finding that the trial court failed to afford appellant the opportunity to show cause why he should not be held in contempt before finding appellant in contempt, and failed to afford appellant the opportunity to present evidence of excusing or mitigating circumstances, as Rule 3.830 requires).
Affirmed in part, reversed and remanded in part.
GREEN, J., concurs.
RAMIREZ, J. (concurring in part, dissenting in part).
I concur with the majority in its reversal of Searcy's conviction and sentence for *1015 direct criminal contempt. I also concur that the trial court erred in summarily denying Searcy's motion to withdraw his plea without appointing conflict-free counsel. I respectfully dissent, however, in our affirmance of Searcy's fifteen-year sentence.
In my view, it defies logic to categorize Searcy's court appearance on December 14, 2006, as anything but a critical stage in his criminal proceeding. The law is clear that sentencing is a critical stage. See Sandoval v. State, 884 So.2d 214, 215 (Fla. 2d DCA 2004); Padgett v. State, 743 So.2d 70, 72 (Fla. 4th DCA 1999); Smith v. State, 590 So.2d 1078 (Fla. 2d DCA 1991) ("An indigent defendant has the right to the assistance of counsel at every critical stage of the proceedings against him, including sentencing."). The majority seeks to circumvent this deeply enshrined constitutional right to counsel by engaging in what I view as a legal fiction  that Searcy was sentenced on November 14, 2006, not on December 14, 2006.
I agree that if Searcy had merely turned himself in at the appointed hour without incident and his sentence had been mitigated as agreed, that the event could be viewed as non-critical. As the majority opinion makes clear, however, what occurred on December 14, 2006, was far from uneventful. It resulted in a fourteen-year increase in Searcy's term of incarceration.
Searcy was charged by information with three third-degree felonies, all alleged to have occurred on October 20, 2004: (1) tampering with or fabricating physical evidence; (2) resisting an officer with violence; and (3) fleeing or attempting to elude a police officer. Searcy went through several defense attorneys, starting with the Office of the Public Defender. On April 18, 2005, the trial court appointed attorney Emilia Diaz Fox as his counsel, after the Public Defender certified a conflict. On April 29, 2005, there was an oral motion to withdraw, with a notation of "reserve ruling." On May 4, 2005, new counsel, Anthony Sanchez, made his appearance in the case. Although the record does not show the reason why, on August 9, 2005, Searcy's bond was revoked, and he was incarcerated until his plea was entered on November 14, 2005.
On that date, Sanchez announced the State's plea offer of "adjudication, 364/TASC." Searcy then requested that the trial court reconsider reinstating his bond, which was denied. Searcy next complained that he had been incarcerated for over 100 days and counsel "hasn't come and talked to me about anything." He requested to be co-counsel at trial, which was also summarily denied. When the court inquired if he was getting along with Sanchez, Searcy stated that he was not. The court then stated, "I'm letting Mr. Sanchez out of your case but not until I find a new attorney."
At that point, Searcy requested to speak with Sanchez. After explaining the plea and that Searcy was facing 51.3 months under the guidelines, with a maximum of fifteen years in prison, the court gave Searcy time to speak with Sanchez. When the case was recalled, Searcy requested a thirty-day furlough. The trial court agreed to grant it if Searcy would "plead to the 15-year maximum today and when you return in 30 days and you have a clean urine and you have picked up no new cases for which I find probable cause and you show up on time, then I will mitigate your sentence to the 364/TASC sentence." Searcy assented.
In Parks v. State, 782 So.2d 968 (Fla. 3d DCA 2001), we vacated the sentence imposed upon the defendant's alleged failure to comply with a previous plea agreement and remanded for further proceedings to be conducted after the appointment of conflict-free *1016 counsel for the defendant. The majority opinion acknowledges that criminal defendants are entitled to counsel at all critical stages of their proceedings, but it characterizes the event scheduled for December 14, 2006, as merely a report to the Department of Corrections to begin Searcy's sentence. The scheduled event, however, was to have a significant impact on Searcy's sentence. The sentence was supposed to be reduced from fifteen years to 364 days, provided Searcy met the conditions of his furlough. For example, if Searcy had "picked up" a new case, under the terms of the plea agreement, the trial court had to find probable cause. It was more than a ministerial act. What was scheduled to have occurred attached significant consequences. The United States Supreme Court has defined a "critical stage" as a step of a criminal proceeding that holds "significant consequences for the accused." Bell v. Cone, 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). I regard a fourteen-year sentence differential as significant.
For the foregoing reasons, I would reverse and remand for further proceedings before a different judge, where Searcy would be represented by conflict-free counsel. If the new judge denies Searcy's motion to withdraw his plea, as the majority has ordered, the judge could still sentence Searcy to fifteen years, if he or she determines that the fifteen-year sentence is appropriate.
NOTES
[1] We point out that it is not whether the issue presented in the motion is meritorious, but whether the defendant was denied conflict-free counsel at a critical stage of the proceedings. Smith v. State, 849 So.2d 485, 486 (Fla. 2d DCA 2003); Padgett, 743 So.2d at 74 (declining to rule on the merits of appellant's motion to withdraw plea, as the denial of right to counsel is not subject to harmless error analysis).