BENTON, C.J.
Jones was convicted at trial of attempted murder in the second degree, attempted armed robbery, and possession of a firearm by a convicted felon. He was also found in contempt for directing an obscene outburst at the trial judge. We affirm the murder, robbery, and firearm possession convictions. But we reverse the contempt conviction.
At trial, Detective Long, an evidence technician for the Jacksonville Sheriffs Office, testified in the state’s case that she had collected and processed evidence taken from the defendant’s house. On cross-examination, defense counsel asked whether she had performed a gunshot residue test on any of the clothing collected there, and she answered that she had not. On redirect examination, the prosecutor asked no questions concerning gunshot residue tests. The trial court then excused the jury, and the following occurred:
THE COURT: ... Detective Long, last time I heard anything about a gunshot residue test it was the test to see if there was blowback on somebody’s hand?
THE WITNESS: That’s correct.
*505 THE COURT: You ever done a GSR on a piece of cloth?
THE WITNESS: No, sir, never.
THE COURT: Ever heard of anybody doing that?
THE WITNESS: No, sir, never.
THE COURT: Better correct that, gentlemen, or you can, [addressing defense counsel], because if you don’t I will.
MR. GARRO [an assistant state’s attorney]: Okay, judge.
THE COURT: You’re not going to let this jury think that there’s something wrong because they didn’t take a nonexistent test.
MR. CARTER [defense counsel]: Nonexistent test?
THE COURT: There is no such thing as taking a gunshot residue test of a piece of cloth.
MR. URRA [another state’s attorney]: Your Honor, I’ll have Mr. Garro ask the question. Mr. Garro can follow up.
THE COURT: I mean — maybe somebody’s hand but a piece of cloth, clothing? It doesn’t work that way.
MR. CARTER: Okay. I will be happy to clarify.
[[Image here]]
THE COURT: ... The jury has returned. Mr. Garro.
BY MR. GARRO:
Q Detective Long, have you ever processed a piece of clothing for gunshot residue?
A No.
Q Does such a test exist on clothing?
A No, it does not.
The prosecution had no further questions of Detective Long. Mr. Carter, the defense lawyer who had himself offered, outside the jury’s presence, “to clarify,” had no further questions for her, either. On appeal, counsel argues that the trial court was mistaken in the view that examining clothing for gunshot residue was a “nonexistent test,” see, e.g., State v. Davis, 283 Conn. 280, 929 A.2d 278 (2007); Camm v. State, 908 N.E.2d 215 (Ind.2009); and that the learned trial judge would have done well not to require counsel, apparently well qualified to try the case without coaching, to ask the witness certain questions on this mistaken premise.
While it is “permissible for a trial judge to ask questions deemed necessary to clear up uncertainties^ the trial judge should not] depart[] from a position of neutrality.” Sparks v. State, 740 So.2d 33, 36 (Fla. 1st DCA 1999) (quoting J.F. v. State, 718 So.2d 251 (Fla. 4th DCA 1998)). “When required by the interests of justice, the court may interrogate witnesses, whether called by the court or by a party.” § 90.615(2), Fla. Stat. (2010). But a trial judge should not suggest a line of questioning to trial counsel. See Evans v. State, 831 So.2d 808, 811-12 (Fla. 4th DCA 2002) (reversing because the trial judge suggested that the prosecution inquire into the immigration status of the defendant); Lee v. State, 789 So.2d 1105, 1107 (Fla. 4th DCA 2001) (reversing because the trial judge suggested questions to the prosecutor about identifying marks on the defendant after “the prosecutor had indicated that direct examination of the witness was concluded, [and] the trial court sua sponte called a sidebar”). “[T]he trial judge serves as the neutral arbiter in the proceedings and must not enter the fray by giving ‘tips’ to either side.” Chastine v. Broome, 629 So.2d 293, 295 (Fla. 4th DCA 1993).
No objection was lodged when the trial judge offered the “tips” below, however, nor was any motion to disqualify ever stated. See McKenzie v. State, 29 So.3d 272, 279 (Fla.2010) (“McKenzie neither objected to the trial court’s [acting in a way *506 allegedly evincing a lack of neutrality] nor did he file a motion to disqualify the trial court based upon this allegedly improper conduct. Therefore, the instant challenge is unpreserved and procedurally barred for appellate consideration.”); Love v. State, 569 So.2d 807, 810 (Fla. 1st DCA 1990). There has been no showing that the trial court’s conduct “constitute[d] error that reaches down into the validity of the trial such that a guilty verdict ... could not have been obtained without the assistance of the ... error.” Wade v. State, 41 So.3d 857, 868 (Fla.2010). See Brooks v. State, 762 So.2d 879, 898-99 (Fla.2000); McDonald v. State, 743 So.2d 501, 505 (Fla.1999). However ill-advised, the trial judge’s suggestions or directives in the present case, outside the jury’s presence, are not fundamental error, and do not require reversal of the murder, robbery or firearm possession convictions.
At a hearing after the trial, the trial judge told Mr. Jones’ mother that she could not participate in a discussion that arose. Mr. Jones responded by using obscene language in addressing the judge, and the judge held him in contempt. The “contempt proceeding” amounted in essence to: “Sir, I hereby adjudge you to be guilty of contempt of this Court, and I sentence you to a term of 180 days in county jail, and that will be consecutive to whatever sentence I give you on the case.”
Direct criminal contempt may be punished summarily, but failure to adhere strictly to the prescribed procedure constitutes error that has been held to be fundamental and reversible. Florida Rule of Criminal Procedure 3.830 requires the following:
(1) The judge must see or hear the conduct constituting the contempt.
(2) The judge shall state the facts upon which the contempt is based.
(3) The judge shall inquire of the defendant whether he has any cause to show why he should not be adjudged guilty of contempt and sentenced.
(4) The defendant must be given the opportunity to present evidence of excusing or mitigating circumstances
(5) The judge must sign the judgment and it must be entered into the record.
(6) The judge must pronounce the sentence in open court.
The trial court failed to comply with paragraphs (2), (3) and (4) of Rule 3.830: Subsection (2) requires that the factual basis be recited; subsection (3) requires that the judge inquire whether the putative con-temnor can show cause why judgment and sentence should not be pronounced; and subsection (4) requires that the judge inquire whether there are excusing or mitigating circumstances.
The failure to observe the requirements of Rule 3.830 mandates reversal. See J.A.H. v. State, 20 So.3d 425, 427 (Fla. 1st DCA 2009) (reversing a contempt judgment where the trial court “failed to follow steps two, three and four”); Searcy v. State, 971 So.2d 1008, 1014 (Fla. 3d DCA 2008); Montoya v. State, 695 So.2d 873, 874 (Fla. 3d DCA 1997) (reversing a contempt judgment entered for “disrespecting the court” because it did not contain a more detailed recital of the facts upon which the contempt was based); Fisher v. State, 638 So.2d 196, 196-97 (Fla. 5th DCA 1994) (“we reverse the judgment holding Fisher in direct criminal contempt ... because it failed to include in its judgment ‘a recital of those facts on which adjudication of guilt is based prior to the adjudication of guilt ... ’, which is mandated by the rule”); Peters v. State, 626 So.2d 1048, 1050 (Fla. 4th DCA 1993); Porter v. Williams, 392 So.2d 59, 60 (Fla. 5th DCA 1981). “Failure to follow the procedural steps of rule 3.830 constitutes fundamental *507 error that requires reversal of the contempt judgment. See Hutcheson v. State, 903 So.2d 1060, 1062 (Fla. 5th DCA 2005).” 20 So.3d at 427. The judgment of and sentence for contempt are therefore reversed.
Affirmed in part and reversed in part.
HAWKES, J., concurs; LEWIS, J., concurs in result only.