LUCAS, Judge,
Concurring in part and dissenting in part.
The record before us is admittedly scant, but it illustrates a not uncommon occurrence that sometimes frustrates the work of our trial courts — when someone disturbs the course of a court proceeding. I do not believe that our review here has been stymied from the lack of a transcript or that the proceeding against Mr. Pole was anything other than the summary direct criminal contempt proceeding that the circuit court’s order stated it was. Therefore, I respectfully dissent from the majority’s decision to construe the proceeding below as something that, I believe, it was not.
Because I conclude that Mr. Pole was indeed subjected to a direct, not an indirect, criminal contempt proceeding, I would confront the issue Mr. Pole argued in his appeal — his right to counsel in a summary direct criminal contempt proceeding. On that point, I would distance our court’s jurisprudence, as much as possible, from what I believe were the erroneous underpinnings of Woods, 987 So.2d 669, and its progeny case, Al-Hakim, 53 So.3d 1171. Nevertheless, inasmuch as those decisions remain intact and stare decisis binds us to follow them, I reluctantly concur, based on their continuing authority, with the majority’s decision to reverse Mr. Pole’s conviction.
I.
The circuit court’s order describes the procedural history that preceded what was supposed to have been a final hearing in Mr. Pole’s case. Apparently, Mr. Pole showed up late and intoxicated for his dissolution of marriage trial. An inauspicious beginning to any kind of court proceeding, to be sure, but his misconduct did not end there. According to the circuit court’s findings, besides being late, Mr. Pole “kept interrupting the [cjourt,” his “interruptions continued throughout the proceedings,” and the trial had to be continued because “the allocated time had expired and ... [Mr. Pole] was not in a condition to represent himself.” By his misconduct, Mr.[5] Pole effectuated the very continuance the court had previously denied.
*969 The court informed Mr. Pole that it was convening a summary direct criminal contempt hearing “as a result of his behavior.” According to the order’s findings, the court properly afforded Mr. Pole an opportunity to present testimony to show cause why he should not be adjudicated guilty, as well as to present evidence of excuse or mitigating circumstances. See Fla. R. Crim. P. 3.830. The court allowed Mr. Pole to present a witness who was in attendance, a Mr. Grimm, whose testimony, according to the court’s mention of it, could fairly be characterized as collateral to the issue of Mr. Pole’s conduct. The order also references drug and alcohol testing that Mr. Pole “agreed to submit to,” presumably, during his presentation of evidence and testimony. The court then adjudicated Mr. Pole guilty of direct criminal contempt, citing the applicable procedural rule for a summary procedure, rule 3.830, and sentenced him to fifteen days in the Polk County Jail.
The majority construes the record we have as one evincing an indirect criminal contempt proceeding.[2] As such, citing to Plank, 190 So.3d at 602, and Kelley, 800 So.2d at 251 (Fla. 2d DCA 2001), the majority concludes that Mr. Pole was entitled to a proceeding “subject to the more generous procedural safeguards set forth in rule 3.840,” including the right to court-appointed counsel. I respectfully disagree. The circuit court’s findings sufficiently describe conduct that occurred “in open court, in the presence of the judge, which disturbs the court’s business, where all of the essential elements of the misconduct are under the eye of the court, [and] are 'actually observed by the court.” In re Oliver, 333 U.S. at 275, 68 S.Ct. 499 (1948) (quoting Cooke v. U.S., 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925)). Mr. Pole delayed the start of his trial by appearing more than a half hour late; when he arrived, he interrupted the presiding judge, repeatedly; and, if we accept the court’s assessment, he was in' “no condition to represent himself’; all of which culminated in the court having to continue his trial over an opposing’ party’s prior objection and in contravention of the court’s prior ruling. Regardless of whether his conduct was the result of alcohol consumption, or boorish manners, stress, or some other concoction of influences that-arose before he came to court, it was clearly Mr. Pole’s disruptive behavior during court that gave rise to the summary proceeding against him.
Now it is true that if the summary proceeding and the court’s adjudication had been predicated on first obtaining the results of Mr. Pole’s drug and alcohol test— that is, if the presiding judge had to rely on any evidence outside of what he witnessed first-hand — then the court could not have convened a summary proceeding for direct criminal contempt against Mr. Pole. See In re Oliver, 333 U.S. at 275, 68 S.Ct. 499; Plank, 190 So.3d at 596; Bryant v. State, 851 So.2d 823, 824-25 (Fla. 2d DCA 2003) (vacating judgment and sentence for direct criminal contempt based on defendant’s shouting obscenities as she walked by a courtroom where the State had to produce a witness to describe what had transpired and what the defen *970 dant had said). But I do not believe that is what occurred here. Rather, as I read this order, Mr, Pole voluntarily agreed to have a drug and alcohol test.during the summary proceeding. It does- not appear to me that this circuit judge predicated convening the summary proceeding on first obtaining the results of a court-ordered alcohol test or .that he premised the guilty adjudication or sentence on the results of that test,[3] unlike the circuit judge in Plank, who very clearly did both. 190 So.3d at 597 (noting that, after receiving complaints about prospective juror’s apparent intoxication, defendant was ordered to take a breathalyzer test outside of court, following which, “an hour later ... the trial judge held a contempt hearing”). If Mr. Pole’s behavior, if his contumacious conduct, could be characterized as having occurred outside of the presiding judge’s presence, then I would agree with, the majority’s approach and analysis. But I am of the opinion that Mr. Pole’s proceeding was, as the circuit court informed him, a summary direct criminal contempt proceeding — properly convened because he disrupted his trial to the point that it had to be canceled.
II.
I turn now to the issue Mr. Pole originally pursued in this appeal, his right to counsel. Relying on this court’s precedent in Al-Hakim, 53 So.3d 1171, Mr. Pole contends that his conviction must be reversed because he was not appointed counsel at any point before or during his contempt hearing. As the majority observes, the "issue of whether a defendant has the right to court-appointed counsel in a summary direct criminal contempt proceeding was (and still is) a point of conflict among three district courts of appeal, including ours. Compare Al-Hakim, 53 So.3d 1171 (holding that an indigent defendant has the right to court-appointed counsel in a summary direct criminal contempt proceeding), and Hayes, 592 So.2d at 329 (Fla. 4th DCA 1992)(same), with Plank, 130 So.3d at 290 (Fla. 1st DCA 2014) (certifying conflict with Al-Hakim and holding that the Sixth Amendment does not confer a right to counsel in a summary direct criminal contempt proceeding). I share the majority’s assessment that the supreme court in Plank neither resolved-the conflict issue before it nor reversed our court’s pronouncement in Air-Hakim concerning the right to counsel in summary direct criminal contempt proceedings. On that discrete issue, no opinion in Plank garnered a majority: three justices rejected the notion that a right to counsel-exists on any basis, 190 So.3d at 596; three believed that it does (or, at least, could) on multiple bases, id. at 608; and the seventh justice concurred only in the result of quashing the affirmance of the defendant’s conviction for direct -criminal contempt, id. at 596. Thus, we are left with our court’s precedent in Al-Hakim and that case’s origin, Woods. The central holdings in these cases — whether tinged or buttressed by the competing opinions in Plank — still stand and. must, therefore, be examined and applied to Mr. Pole’s case.
A.
' In Woods, we declared — for the first time in this district — that ah indigent defendant is entitled to court-appointed counsel in a summary direct criminal contempt *971 proceeding initiated by a presiding judge. 987 So.2d at 676. Although the Woods opinion included an extensive exposition on the development of constitutional law concerning this “difficult and .., unresolved issue,” id, at 674, our court purposely avoided a constitutional justification for our holding. Instead we fashioned this expansion of the right to counsel in summary contempt proceedings from a less-than-obvious reading of our State’s rules of criminal procedure — in particular, Florida Rules of Criminal Procedure 3.010 and 3.111:
. The trial court’s failure to ensure that .Mr. Woods actually had counsel present to represent him regarding the alleged direct, criminal .contempt' violates the Florida Rules, of Criminal Procedure, even if it is unclear whether that action violates federal constitutional law. Although , the constitutional' dimension of this issue is worthy of. careful consideration, the issue in this, case is actually resolved by the requirements of a lowly rule of criminal procedure. . *
The Florida Rules of Criminal Procedure apply in all criminal proceedings in Florida state courts “including proceedings involving direct and indirect' criminal contempt.” Rule 3.111(a) provides, for appointment of counsel at first appearance, and rule 3.111(b) requires counsel for indigent persons in all prosecutions for offenses punishable by incarceration. '' '
Id. at 674. Drawing these rules together, we concluded in Woods “that the Florida Rules of Criminal Procedure required the availability of appointed counsel” for. a summary direct criminal contempt “prosecution.” Id. Later,, in Al-Hakim, we reiterated that rule 3.111(b), requires the appointment of counsel in a summary direct criminal contempt proceeding, notwithstanding rule 3.830’s silence on that subject. 53 So.3d at 1173-74.[4] The pro *972 visions within rule 3.111(b), we held, required the presiding judge “to determine whether Mr. Al-Hakim was indigent and therefore entitled to the appointment of counsel in this direct criminal contempt proceeding in .which Mr. Al-Hakim, a member of the public, was taken into custody.” Id. at 1174.
B.
Left unsaid in Woods and Al-Hakim was the assumption that the Florida Rules of Criminal Procedure hold their own innate, organic power to require the appointment of counsel in a summary contempt proceeding. They assuredly do not. A rule of procedure cannot create a substantive right that would not otherwise exist. See, e.g., Haven Fed. Sav. & Loan Ass’n v. Kirian, 579 So.2d 730, 732 (Fla.1991) (explaining distinction between substantive and procedural law; “[substantive law has been defined as the part of the law which creates, defines, and regulates rights” (citing State v. Garcia, 229 So.2d 236 (Fla.1969))); Williams v. State, 932 So.2d 1233, 1237 (Fla. 1st DCA 2006) (holding that professional standards for lead counsel in capital cases described in rule 3.112(f) did not create an independent “right” to counsel who met those qualifications, and remarking that “[sjubstantive law creates substantive rights; rules of procedure ... ‘merely provide the remedies to enforce rights’” (quoting State v. Dorian, 619 So.2d 311, 313 (Fla. 3d DCA 1993))); cf. In re Florida Rules of Criminal Procedure, 272 So.2d 66, 65-66 (Fla.1972) (Adkins, J., concurring) (“Practice and procedure encompass the course, form, manner, means, method; mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. ‘Practice and procedure’ may be described as the machinery of the judicial process as opposed to the product thereof.”); Birnholz v. 44 Wall St. Fund, Inc., 880 F.2d 335, 339 (11th Cir.1989) (observing that procedural rules are “legal machinery and not a fountain of legal rights”). The rules of criminal procedure are no exception. A constitutional right to counsel in a summary direct contempt proceeding could only emanate from a provision within the constitution. Our holdings in Woods and Al-Hakim should never have thrust so much jurisprudential freight upon a “lowly rule of criminal procedure,” 987 So.2d at 674, or on any other rule of procedure. It is a weight no procedural rule was meant to carry.
If Mr. Pole has a constitutional right to counsel in a summary direct criminal contempt proceeding — and I do not believe that he does, at least under the Sixth Amendment[5] — then it must derive from a *973 provision found within the State or Federal constitutions, not from a novel interpretation of our state’s rules of criminal procedure. See Plank, 190 So.3d at 602 (Labarga, C.J., and Lewis, and Polston, JJ., concurring) (“Plank does not have a Sixth Amendment right to counsel prior to being incarcerated for direct criminal contempt, as long as the period of incarceration does not exceed six months.”). Whether the constitution affords that right in these proceedings is indeed a topic “worthy of careful consideration,” Woods, 987 So.2d at 674, but our precedent, unfortunately, would seem to foreclose its consideration at all.
I believe our court was wrong to craft a constitutional safeguard from procedural rules that were crafted by a court-appointed committee. But unless we recede from our holdings in Air-Hakim and Woods (or a majority of the Florida Supreme Court can reach a consensus on this admittedly contentious point) we are bound to follow the law that has been laid down in our district. For that reason, I must concur with the court’s decision to reverse Mr. Pole’s conviction.

. Mr. Pole never argued this point until after we directed supplemental briefing from the parties following the release of the Florida Supreme Court’s decision in Plank, 190 So.3d 594. In terms of the record before us, I, too, am troubled by the lack of a hearing transcript (perhaps more so than Mr. Pole, who did not argue this point either). However, since I do not believe a summary contempt proceeding can be likened to a ''criminal prosecution,” see infra n. 4, I am not prepared to hold, as the majority appears to, that the failure to have a court reporter record and transcribe a summary contempt proceeding amounts to fundamental error.

. The reference to Mr. Pole agreeing to submit to a drug and alcohol test is within a subheading of the order that reads, “The testimony of Mr. Pole." Other than recounting the results of his drug and alcohol testing in a subsequent section of the order, it does not appear that the circuit court relied on those test results in its decision to convene the summary proceeding or in -its adjudication and sentence.

, Trying to parse procedural rules to answer the constitutional question of whether a defendant has the right to: counsel in summary contempt proceedings is, I believe, a discursive approach to the problem, But even if we assume that the rulés of criminal procedure could somehow corner the entirety of this constitutional issue within ; their ■ text, our court’s interpretation of that text was likely flawed. As we acknowledged in Al-Hakim, rule 3.830, the operative rule that "outlines the procedural requirements for direct criminal contempt,” does not require the appointment of counsel in-a summary direct criminal contempt proceeding. 53 So.3d at 1173. Rule 3.830 begins: "A criminal contempt may be punished summarily if the courtj saw or heard the conduct constituting the contempt committed in the- actual presence of the court,” To my reading, that provision is clear and unambiguous.' Thus,,in Woods and AZ- ' Hakim, we elevated rule 3.830’s silence concerning .-rule 3.11 l(b)'a requirement to appoint counsel to effectively abrogate .the plain language of rule 3.830. See Brown v. State, 715 So.2d 241, 243 (Fla.1998) (holding that rule.of criminal procedure, .if unambiguous, . ‘.‘must be. .accorded -its- plain and ordinary meaning” and observing that statutory rules of construction also apply to the construction of, procedural rules); cf. Jones v. ETS of New Orleans, Inc., 793 So.2d 912, 914-15 (Fla.2001) ("A basic tenet of statutory interpretation is that a ‘statute should be interpreted to give effect to every clauáé in it, and to accord meaning and harmony to all of its parts.’ ” (quoting Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996))). We also ignored the plain language in rule 3,840, governing indirect criminal contempt proceedings, which Clearly addresses appointment of counsel. See Fla. R. Crim. P. 3.840(d) ("The defendant is entitled to be represented by counsel-”). Although not binding, it appears that three of the justices in Plank were inclined to'reject our court’s interpretation of the rules of criminal procedure on this point, as well:
Plank’s last contention is .(hat he was enti- . tied to the appointment of counsel based on [rule] 3.111(b)_ Rule 3.111(b) requires the appointment of counsel for indigent persons "in all criminal prosecutions for .-offenses punishable by incarceration.” . However, this, general rule does not trump the specific rule governing direct criminal *972 contempt, [rule] 3.830, which specifically addresses the procedures that govern direct criminal contempt proceedings.
[[Image here]]
In contrast, [rule] 3.840 governs indirect criminal contempt, which involves conduct committed outside the presence of the court. Subsection (d) of rule 3.840 explicitly provides that a defendant is entitled to be represented by counsel at the contempt hearing_Under our precedent, -a specific rule trumps a general rule. Thus, applying that principle here, the specific rule governing direct criminal contempt trumps a general rule pertaining to the right to counsel.
190 So.3d at 603 (citations omitted).

. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense.” Similarly, article I, section 16 of :he Florida constitution guarantees that ■ “[i]n ill criminal' prosecutions the accused ... shall have the right ... to be heard in person, by counsel[,] or both.” A summary direct criminal contempt proceeding would not seem to fall within the textual or original meaning of a "criminal prosecution,” because summary contempt proceedings are not commenced by the State, are not truly "adversarial” in nature (insofar as there is no opposing party or adverse litigant), and, by virtue of ■ their summary nature, purposely exclude *973 most of the formal requirements of criminal cases such as the filing of a formal charge, indictment, or information, holding an arraignment, or affording the right to a trial by jury. Cf. Moore v. Illinois, 434 U.S. 220, 226-27, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (clarifying that the right to counsel applies "only to corporeal identifications conducted at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. This is so because the initiation of such proceedings marks the commencement of the 'criminal prosecutions’ to which alone the explicit guarantees of the Sixth Amendment are applicable.”); U.S. v. Wilson, 421 U.S. 309, 316, 95 S.Ct. 1802, 44 L,Ed.2d 186 (1975) ("The face-to-face refusal to comply with the court’s order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding ... summary contempt must.be available to vindicate the court’s authority....”); Searcy v. State, 971 So.2d 1008, 1013-14 (Fla. 3d DCA 2008) (noting that summary direct criminal contempt proceedings pose "an exceptional situation as the charging court is afforded significant power to act simultaneously and summarily as prosecutor, witness, and judge.... [A]n individual charged with direct criminal contempt neither enjoys a right to a formal hearing on the charges nor is he entitled to legal representation. ...”).