# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-731
_____

KRAIG ALEXANDER WILLIAMS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Russell L. Healey, Judge.

August 16, 2018

B.L. THOMAS, C.J.

Appellant challenges the trial court's denial of his cause challenge of Juror Gilbreath, who once worked as a prosecutor for the state attorney's office and whose husband is an investigator for that office. We affirm.

*Facts*

Appellant was charged by information with possession of oxycodone, morphine, heroin, cocaine, and cannabis, and was charged with knowingly driving while license suspended or revoked. During voir dire before trial, prospective juror Gilbreath stated that she had been an attorney for thirty-seven years and that her husband worked for the state attorney's office. In response to questions from the State, Gilbreath stated she currently worked as a family law attorney, was a prosecutor for

eight years in the state attorney's office, followed by criminal defense work for two or three years. Gilbreath also stated that her husband is an investigator in the state attorney's office. Gilbreath stated that nothing about her experience as a prosecutor or her husband's employment would affect her ability to be fair and impartial.

Appellant moved to strike Gilbreath for cause, based on her past relationship with the state attorney's office and her husband's current employment with the state attorney's office. The State argued that Gilbreath indicated she could be fair and impartial, and additionally argued that she had also been a criminal defense attorney for two or three years. The trial court denied Appellant's motion to strike. Because Appellant had already exhausted six peremptory strikes, Appellant requested an additional strike, which the trial court denied, stating there was no basis.

Before proceeding to trial, Appellant objected to the jury panel being sworn, based on the court's denial of the cause challenge of Juror Gilbreath. The State again argued Gilbreath's impartiality and her previous criminal defense work. The trial court found there was no reasonable doubt that Gilbreath could be fair and impartial, adding that he had known her for thirty-seven years, that no one challenged her unequivocal statements in voir dire that she could be fair and impartial, and that she had been a well-respected attorney in Jacksonville for many years.

*Analysis*

"The standard of review of a trial court's ruling on a cause challenge is one of abuse of discretion." *Ranglin v. State*, 55 So. 3d 744, 746 (Fla. 4th DCA 2011) (citing *Singleton v. State*, 783 So. 2d 970, 973 (Fla. 2001)). "The trial court has broad discretion in determining whether to grant a challenge for cause, and the decision will not be overturned on appeal absent manifest error." *Kopsho v. State*, 959 So. 2d 168, 170 (Fla. 2007).

"The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Busby v. State*, 894 So. 2d 88, 95 (Fla. 2004). "Where

2

the record demonstrates a reasonable doubt about a juror's ability to be impartial, the trial court abused its discretion in denying the cause challenge." *Carratelli v. State*, 961 So. 2d 312, 319 (Fla. 2007).

The Florida Supreme Court has repeatedly rejected the argument that "a law enforcement position inherently creates a disability to serve as a fair and impartial juror." *State v. Williams*, 465 So. 2d 1229, 1230 (Fla. 1985). A law enforcement connection, standing alone, is generally not enough to render a potential juror partial to the State. *See, e.g. Busby*, 894 So. 2d at 95 (stating "[t]his Court has consistently held that the mere fact that someone is a correctional officer is not per se grounds for a cause challenge"); *see also Blake v. State*, 110 So. 3d 534, 535 (Fla. 1st DCA 2013) (holding it was error to strike a potential juror who was engaged to a public defender in a different circuit); *Livingston v. State*, 512 So. 2d 223, 224 (Fla. 4th DCA 1987) (holding trial court did not err "in disallowing appellant's challenge to the husband of a former secretary in the state attorney's office, after he had run ou[t] of peremptory challenges").

Reversible error has been found in failing to excuse potential jurors for cause who had connections to law enforcement *and* made equivocal statements indicating that the connection may affect their ability to be impartial. *See Williams v. State*, 638 So. 2d 976, 977-978 (Fla. 1994) (holding juror who had contacts with U.S. Attorney's Office, stated that he had "deep feelings in this kind of case," and made equivocal statements that "I hope that I can" be impartial and "I'll be impartial because that's my character" should have been stricken for cause); *Jefferson v. State*, 489 So. 2d 211, 212 (Fla. 3d DCA 1986) (finding error in failing to excuse juror for cause who repeatedly made equivocal remarks about whether her husband's career in law enforcement would affect her ability to be impartial).

Appellant cites cases from the Third and Fourth Districts where jurors' employment with the state attorney's office was grounds for reversal. In *Bethel v. State*, the Fourth District held that a juror who was currently working as an assistant state attorney for the same state attorney's office that was currently prosecuting the case should have been stricken for cause. 122

So. 3d 944, 949 (Fla. 4th DCA 2013). Similarly, in *Denson v. State*, the Fourth District found reversible error in a trial court's failure to strike for cause a juror who currently was an assistant state attorney and was the supervisor of the assistant state attorney who was trying the case. 609 So. 2d 627, 628 (Fla. 4th DCA 1992). And in *Henry v. State*, the defendant challenged a potential juror for cause who currently worked as a legal secretary for the state attorney's office. 586 So. 2d 1335, 1336 (Fla. 3d DCA 1991). The potential juror gave equivocal answers to questions about her impartiality, saying "I don't think so" when the trial court asked if her working in the state attorney's office would affect her impartiality. *Id.* The Third District held that the juror's "employment at the state attorney's office does not provide an inherent reason to preclude her service on the jury," but her employment created some doubt that was not relieved by her equivocal responses. *Id.* at 1337. The cases above are distinguishable from the present case, however, because in each of the above-cited cases, the juror in question was currently employed by the state attorney's office, and had some connection to the attorney trying the case or was related to someone who participated in the trial.

Here, Juror Gilbreath began her career by working for the state attorney's office for eight years, but afterward moved to criminal defense work for two to three years, and has since been working in family law for the past twenty-six years. Gilbreath's husband worked as an investigator for the state attorney's office, but did not participate in the trial. Juror Gilbreath stated unequivocally that her former employment and her husband's current employment would not affect her ability to be impartial. Conversely, *Henry* held that a connection to the state attorney's office, on its own, was not enough to establish the lack of impartiality of a juror; rather, the connection, coupled with equivocal statements about impartiality, rendered a juror partial to the State. 586 So. 2d at 1337.

Juror Gilbreath's employment with the state attorney's office nearly twenty-seven years earlier, and her husband's employment as an investigator with the state attorney's office, standing on its own, does not establish that Juror Gilbreath was partial to the State. *Williams*, 465 So. 2d at 1230-31. Further, Gilbreath's unequivocal statements that she would not be biased by any

4

connections to the state attorney's office were sufficient to remove any reasonable doubt as to her impartiality.

Appellant also argues that the court abandoned its role as a neutral arbiter by stating that he knew Juror Gilbreath and that she had been a respected attorney for many years. Appellant cites *Jones v. State*, 54 So. 3d 503 (Fla. 1st DCA 2010), in which the trial judge suggested a line of questioning to the prosecutor. This court noted that the judge's actions were "ill-advised," but found that the actions did not constitute fundamental error. *Id.* at 505-06. Here, the trial court's comments that Juror Gilbreath was a well-respected attorney are not as suggestive as the comments in *Jones*, which this court ultimately held were not in error; thus, there was no error here, and the trial court did not abuse its discretion in denying Appellant's cause challenge to Juror Gilbreath.

We affirm without comment the trial court's denial of Appellant's motion for judgment of acquittal.

AFFIRMED.

RAY, J., concurs; WOLF, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WOLF, J., dissenting.

I would reverse because appellant's challenge for cause of juror Gilbreath should have been granted, and the trial court impermissibly utilized its own personal knowledge of the prospective juror to determine lack of bias. The prospective juror's husband is an investigator in the office that is prosecuting this criminal case. Due to the special relationship between spouses and the husband's conflicting employment related to this particular case, an appearance of unfairness and partiality was created. This appearance of unfairness was further bolstered by the judge

5

effectively becoming a witness in support of the juror's ability to be impartial. A judge's personal knowledge concerning a prospective juror does not overcome the appearance of unfairness in this proceeding and cannot be utilized in any manner in the judge's decision to deny a challenge for cause.

During the voir dire, appellant attempted to excuse juror Gilbreath for cause. The trial court denied the motion. The defense, which had used all its peremptory challenges, requested an additional one. The court denied this request.

On the day of trial, appellant objected to the jury panel being sworn due to the denied cause challenge for juror Gilbreath:

> [DEFENSE COUNSEL]: Your Honor, we would object to the jury panel being sworn based on our denied cause challenge for Juror No. 16, Miss Gilbreath. As she testified during voir dire, her husband is currently employed by the State Attorney's Office, which is the agency that's prosecuting [appellant]. She receives family income from the agency that's prosecuting [appellant]. We'd ask that she be stricken and possibly replaced with the alternate juror.
>
> THE COURT: Mr. Milo?
>
> [PROSECUTOR]: Judge, we would rely on previous argument from yesterday. She indicated that she would be fair and impartial, and she has also been a criminal defense attorney. And she was actually a criminal defense attorney after she was employed with the State Attorney's Office.
>
> THE COURT: Well, I'll find that there, *in my mind, is absolutely no reasonable doubt that she can be fair and impartial. I happen to know the woman.*

(Emphasis added).

The test for whether an individual should be excused for cause is whether a juror "can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions

6

on the law given to him by the court." *State v. Williams*, 465 So. 2d 1229, 1231 (Fla. 1985) (quoting *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984)). While the test initially appears to be a solely subjective one concerning the ability of a particular juror to render an impartial verdict, certain relationships a prospective juror has with people who are connected to the case being tried create such an objective appearance of partiality that challenges for cause should be granted. *Polynice v. State*, 568 So. 2d 1346 (Fla. 4th DCA 1990). "In order to satisfy the *appearance* of justice, a sworn jury should not include as its foreman, the step father of an officer who testified in the case." *Id.* at 1347 (emphasis added). Our justice system needs not only to be fair but also to appear fair to the public at large. In *Denson v. State*, 609 So. 2d 627, 629 (Fla. 4th DCA 1992), the court stated:

> Not only for the reasons cited above *but also for the integrity of the judicial process and the guarantee of the defendant's constitutional right to trial by a fair and impartial jury,* we hold that it is error to fail to excuse from jury service an assistant state attorney from the very office charged with prosecuting a defendant.

(Emphasis added).

In analyzing whether the appearance of integrity in the judicial system is met, certain factors must be evaluated, including the connection of a prospective juror or the person with a close relationship with that juror with a particular case.

Thus, a person's employment or status will not necessarily require exclusion if there is no connection with a particular case. *See, e.g.*, *Williams*, 465 So. 2d at 1230-31 (holding a juror's employment as a corrections officer did not necessarily require exclusion from jury for battery on a corrections officer because there was no showing of any connection with a particular case).

Where, however, an extremely close relationship exists between the prospective juror and a person with a connection to the case being prosecuted, disqualification is required. *See Bethel v. State*, 122 So. 3d 944 (Fla. 4th DCA 2013) (holding a potential juror who was an assistant state attorney in the office prosecuting the case should have been disqualified for cause); *Henry v. State*,

7

586 So. 2d 1335 (Fla. 3d DCA 1991) (holding reversal was required where a legal secretary in the state attorney's office that was handling the case was not disqualified for cause); *Polynice*, 568 So. 2d at 1347 (holding disqualification was required where juror's stepson was one of the State's witnesses).

While there is no case directly on point with the facts of the instant case, the perceived integrity of the criminal justice system requires reversal in this case.

The relationship between the juror and the state attorney employee could not have been any closer, wife and husband. The juror's husband was an investigator for the state attorney prosecuting this case. While an investigator is not an attorney in the prosecutor's office, the close relationship required between attorneys and their investigators and the important role that investigators play in the prosecution of cases is undeniable. Clearly, the relationship is as important as the one established in *Henry*, which required disqualification.

The bottom line is that we should not seat a juror where there is a reasonable perception that the juror's verdict may be based on not wanting to upset her husband or his co-workers. Even if automatic disqualification is not required, mere assurances of impartiality should not be sufficient to allow a juror with close connections to the state attorney's office prosecuting the case to serve on a jury. *See Denson*, 609 So. 2d at 628-29. As held in *Ortiz v. State*, 543 So. 2d 377 (Fla. 3d DCA 1989), under circumstances where partiality can easily be inferred, there should be a strong showing of no partiality prior to allowing a juror to serve.

The record here does not indicate such a showing. In fact, the trial judge, at least in part, made his determination that the juror could be impartial on non-record evidence - his own personal knowledge of the juror. Determinations of this type should be made on record evidence that can be challenged by the parties.

Appellant should be granted a new trial.

———————————————

Andy Thomas, Public Defender, M. J. Lord, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Robert Quentin Humphrey, Assistant Attorney General, Tallahassee, for Appellee.